FILED

2022 APR -7 AM 8: 13

*CLERK OF COURT... / CLERMONT COUNTY, OH*

## IN THE COURT OF COMMON PLEAS
## CLERMONT COUNTY, OHIO

|  |  |  |
|---|---|---|
| **TOTAL QUALITY LOGISTICS, LLC,**<br>4289 Ivy Pointe Boulevard<br>Cincinnati, OH 45245 | : | Case No.: 2022 CVH 281<br><br>Judge: Miles |
|  | : |  |
| **Plaintiff,** | : |  |
|  | : |  |
| **v.** | : |  |
|  | : |  |
| **CESAR MEDELLIN,**<br>14838 Vance Jackson Road<br>San Antonio, TX 78249, | : | **VERIFIED COMPLAINT FOR**<br>**TEMPORARY RESTRAINING ORDER,**<br>**PRELIMINARY INJUNCTION,**<br>**PERMANENT INJUNCTION, AND OTHER** |
| and | : | **RELIEF** |
|  | : |  |
| **VICTOR HUGO GONZALEZ,**<br>3014 Wood Circle<br>San Antonio, TX 78251, | : |  |
|  | : |  |
| and | : |  |
|  | : |  |
| **DONATO CARDENAS, JR.,**<br>713 Boise Way<br>Laredo, TX 78041, | : |  |
|  | : |  |
| **Defendants.** | : |  |

---

For its Verified Complaint for Temporary Restraining Order, Preliminary Injunction, Permanent Injunction, and Other Relief against Defendants Cesar Medellin ("Medellin"), Victor Hugo Gonzalez ("Gonzalez"), and Donato Cardenas, Jr. ("Cardenas") (collectively, "Defendants"), Plaintiff Total Quality Logistics, LLC ("TQL") states and alleges as follows:

### Introduction

1.     This case arises from Defendants' breaches of certain contractual provisions contained in signed and enforceable agreements between TQL and each Defendant, Defendants'

misappropriation of trade secret information belonging to TQL, and Defendants' tortious interference with TQL's customer and carrier relationships.

## Parties, Jurisdiction, and Venue

2.      TQL is an Ohio limited liability company with its principal place of business located in Clermont County, Ohio.  TQL provides freight brokerage and third-party logistics services to customers across the continental United States.

3.      Upon information and belief, Medellin is a Texas resident.  He was previously a TQL employee and is now an employee of Palos Garza Logistics ("PGL"), a Texas company that is a freight brokerage and a competitor of TQL.

4.      Upon information and belief, Gonzalez is a Texas resident.  He was previously a TQL employee and is now an employee of PGL.

5.      Upon information and belief, Cardenas is a Texas resident.  He was previously a TQL employee and is now an employee of PGL.

6.      Jurisdiction and venue are appropriate because each Defendant contractually agreed to venue and jurisdiction in this Court, and all improper acts and conduct were purposely directed against an Ohio company located in Clermont County.

## Facts

A.      **The Nature of TQL's Business and the Logistics Industry**

7.      TQL is a national leader in the logistics industry, providing shipping services, third-party logistics services, freight brokerage services, truck brokerage services, and assistance with supply-chain management across the continental United States.

8.      TQL's customers consist of companies that want to ship goods from one location to another.  These customers include companies that need to ship their own goods.  But many of

2

TQL's customers also include other freight brokers that have already agreed to ship goods on behalf of another customer, but need assistance in finding a carrier to fulfill the shipment.

9.     TQL does not own or operate any of its own trucks or trucking equipment. Nor does it employ any drivers to haul freight. Rather, TQL engages and coordinates independent carriers that are able and willing to haul freight at the times and places required by TQL's customers.

10.     The third-party logistics industry (and the freight-shipping industry at large) is extremely competitive. Among other things, relationships with customers, carriers, and other brokers are essential to sustained success within the industry. TQL spends a great deal of time, money, and other resources developing relationships with new customers and strengthening relationships with existing ones. Further, TQL has made substantial investments to develop and protect the secrecy of its proprietary systems, processes, and procedures it uses to manage its operations and to succeed in this hyper-competitive industry.

11.     Further, TQL protects its trade secrets and confidential information by conditioning employee access upon use of constantly changing passwords and requiring all employees to sign agreements that include confidentiality and restrictive covenant provisions. Likewise, TQL's systems implement internal controls that prevent employees from downloading or printing certain information.

**B.     Medellin's Employment with TQL**

12.     Medellin worked at TQL from September 21, 2020 to March 15, 2022.

13.     Before commencing employment with TQL, Medellin was required to sign, and did sign, an Employee Non-Compete, Confidentiality and Non-Solicitation agreement ("the Medellin

Agreement"), a true and accurate copy of which is attached hereto as **Exhibit A** and is incorporated herein by reference.

14.     In the Medellin Agreement, Medellin agreed, among other things, for a period of one year after his employment ended, not to work for or associate with any "Competing Business," as that term is defined in the Medellin Agreement, solicit any TQL customer or carrier with which TQL had a relationship, or solicit or recruit other TQL employees. Medellin also agreed to keep confidential and not disclose or use any confidential, trade secret, or proprietary information to which he was exposed while working for TQL. Finally, Medellin contractually agreed that TQL would be entitled to an award of attorneys' fees if it had to bring an action against Medellin to enforce the terms of the Agreement.

15.     While at TQL, Medellin held the positions of Mexico Logistics Coordinator II and Mexico Logistics Coordinator Captain in the company's San Antonio office.

16.     As Medellin had limited prior logistics or brokerage experience, TQL provided him with extensive training on topics that included its services, pricing structure, sales strategies, customers and carriers, and general operations. In short, Medellin was given the blueprint for how to successfully broker freight from an industry leader. Medellin developed close relationships with and an intimate knowledge of certain TQL customers and carriers, and had access to TQL's trade secrets and confidential information. He was a primary point of contact with TQL customers with whom he interacted.

17.     TQL recently learned that Medellin has been working for PGL in a position that is the same as or similar to his position at TQL, and that such employment began prior to one year after his employment with TQL ended.

18.     Upon information and belief, Medellin has stored certain confidential information belonging to TQL on one more devices he controls, including TQL rate information and contact information for customers and carriers, and has used such information for the benefit of PGL and to the detriment of TQL. In particular, upon information and belief, Medellin is using TQL carrier information to secure business at PGL from a customer with which he worked while at TQL.

19.     Given that Medellin has assumed a similar, if not the same, role that he had while working with TQL, it is inevitable that this unlawful conduct, as well as other conduct, such as improper solicitations and utilization of confidential or trade secret information, will continue.

**C.      Gonzalez's Employment with TQL**

20.     Gonzalez worked at TQL from February 22, 2021 to March 10, 2022.

21.     Before commencing employment with TQL, Gonzalez was required to sign, and did sign, an Employee Non-Compete, Confidentiality and Non-Solicitation agreement ("the Gonzalez Agreement"), a true and accurate copy of which is attached hereto as **Exhibit B** and is incorporated herein by reference.

22.     In the Gonzalez Agreement, Gonzalez agreed, among other things, for a period of one year after his employment ended, not to work for or associate with any "Competing Business," as that term is defined in the Gonzalez Agreement, solicit any TQL customer or carrier with which TQL had a relationship, or solicit or recruit other TQL employees. Gonzalez also agreed to keep confidential and not disclose or use any confidential, trade secret, or proprietary information to which he was exposed while working for TQL. Finally, Gonzalez contractually agreed that TQL would be entitled to an award of attorneys' fees if it had to bring an action against Gonzalez to enforce the terms of the Agreement.

23.     While at TQL, Gonzalez held the positions of Logistics Account Executive Trainee, Logistics Account Executive, and Mexico Account Representative Trainee in the company's San Antonio office.

24.     As Gonzalez had no prior logistics or brokerage experience, TQL provided him with extensive training on topics that included its services, pricing structure, sales strategies, customers and carriers, and general operations.  In short, Gonzalez was given the blueprint for how to successfully broker freight from an industry leader.  Gonzalez developed close relationships with and an intimate knowledge of certain TQL customers and carriers, and had access to TQL's trade secrets and confidential information.  He was a primary point of contact with TQL customers with whom he interacted.

25.     TQL recently learned that Gonzalez has been working for PGL in a position that is the same as or similar to his position at TQL, and that such employment began prior to one year after his employment with TQL ended.  Given that Gonzalez has assumed a similar, if not the same, role that he had while working with TQL, it is inevitable that this unlawful conduct, as well as other conduct, such as improper solicitations and utilization of confidential or trade secret information, will continue.

**D.     Cardenas' Employment With TQL**

26.     Cardenas worked at TQL from December 14, 2020 to November 16, 2021.

27.     Before commencing employment with TQL, Cardenas was required to sign, and did sign, an Employee Non-Compete, Confidentiality and Non-Solicitation agreement ("the Cardenas Agreement"), a true and accurate copy of which is attached hereto as **Exhibit C** and is incorporated herein by reference.

28.    In the Cardenas Agreement, Cardenas agreed, among other things, for a period of one year after his employment ended, not to work for or associate with any "Competing Business," as that term is defined in the Cardenas Agreement, solicit any TQL customer or carrier with which TQL had a relationship, or solicit or recruit other TQL employees. Cardenas also agreed to keep confidential and not disclose or use any confidential, trade secret, or proprietary information to which he was exposed while working for TQL. Finally, Cardenas contractually agreed that TQL would be entitled to an award of attorneys' fees if it had to bring an action against Cardenas to enforce the terms of the Agreement.

29.    While at TQL, Cardenas held the position of Mexico Operations Specialist in the company's San Antonio office.

30.    As Cardenas had limited prior logistics or brokerage experience, TQL provided him with extensive training on topics that included its services, pricing structure, sales strategies, customers and carriers, and general operations. In short, Cardenas was given the blueprint for how to successfully broker freight from an industry leader. Cardenas developed close relationships with and an intimate knowledge of certain TQL customers and carriers, and had access to TQL's trade secrets and confidential information. He was a primary point of contact with TQL customers with whom he interacted.

31.    TQL recently learned that Cardenas has been working for PGL in a position that is the same as or similar to his position at TQL, and that such employment began prior to one year after his employment with TQL ended. Given that Cardenas has assumed a similar, if not the same, role that he had while working with TQL, it is inevitable that this unlawful conduct, as well as other conduct, such as improper solicitations and utilization of confidential or trade secret information, will continue.

7

## COUNT ONE: BREACH OF CONTRACT

### (Against Medellin)

32.     TQL restates and realleges the preceding paragraphs of this Complaint by reference.

33.     The Medellin Agreement is a valid and legally enforceable contract that TQL and Medellin entered into freely and without duress.

34.     In exchange for his commitment to be bound by the Medellin Agreement, Medellin received adequate and sufficient consideration, including, without limitation, ongoing employment, extensive training, and continued access to TQL's confidential information to assist with his professional development.

35.     The Medellin Agreement provides for a one-year period following employment during which Medellin is prohibited from, among other things, accepting employment or affiliation or association with a competing business, of which PGL, which has brokerage authority just like TQL, is one; and from soliciting TQL's customers, carriers, or employees. The Medellin Agreement also prohibits the use and disclosure, for the benefit of anyone other than TQL, of TQL's confidential information, including customer- and carrier-related information, rate information, and training materials.

36.     Medellin has breached and continues to breach the Medellin Agreement by virtue of the fact that he has accepted and maintained employment in the same or similar position with PGL; and, upon information and belief, through such employment, used or disclosed TQL's confidential information, solicited its customers, carriers, or employees, and/or otherwise competed with TQL, prior to the expiration of the one-year restrictive covenant.

37.     Unless immediately restrained and enjoined, Medellin will cause harm, damage, and injury to TQL for which it has no adequate remedy at law.

38.     Therefore, consistent with this Verified Complaint and the contemporaneously filed Motion for a Temporary Restraining Order and Preliminary Injunction, TQL prays that the Court issue immediate, preliminary, and permanent injunctive relief enjoining Medellin from any further violation of the Medellin Agreement, including the non-compete, non-solicitation, and confidential information provisions.

39.     In the alternative and/or in addition to such relief, as a direct and proximate result of Medellin's breach and continuing breach of the Medellin Agreement, TQL has suffered monetary damages in an amount to be proven at trial, but believed to exceed the jurisdictional minimum of this Court.

40.     Pursuant to the Medellin Agreement, TQL is also entitled independently to recover the attorney's fees expended as a result of Medellin's violation of such agreement, in an amount to be proven at trial and/or through appropriate post-trial motions.

## COUNT TWO:  BREACH OF CONTRACT

### (Against Gonzalez)

41.     TQL restates and realleges the preceding paragraphs of this Complaint by reference.

42.     The Gonzalez Agreement is a valid and legally enforceable contract that TQL and Gonzalez entered into freely and without duress.

43.     In exchange for his commitment to be bound by the Gonzalez Agreement, Gonzalez received adequate and sufficient consideration, including, without limitation, ongoing

employment, extensive training, and continued access to TQL's confidential information to assist with his professional development.

44.     The Gonzalez Agreement provides for a one-year period following employment during which Gonzalez is prohibited from, among other things, accepting employment or affiliation or association with a competing business, of which PGL, which has brokerage authority just like TQL, is one; and from soliciting TQL's customers, carriers, or employees. The Gonzalez Agreement also prohibits the use and disclosure, for the benefit of anyone other than TQL, of TQL's confidential information, including customer- and carrier-related information, rate information, and training materials.

45.     Gonzalez has breached and continues to breach the Gonzalez Agreement by virtue of the fact that he has accepted and maintained employment in the same or similar position with PGL; and, upon information and belief, through such employment, used or disclosed TQL's confidential information, solicited its customers, carriers, or employees, and/or otherwise competed with TQL, prior to the expiration of the one-year restrictive covenant.

46.     Unless immediately restrained and enjoined, Gonzalez will cause harm, damage, and injury to TQL for which it has no adequate remedy at law.

47.     Therefore, consistent with this Verified Complaint and the contemporaneously filed Motion for a Temporary Restraining Order and Preliminary Injunction, TQL prays that the Court issue immediate, preliminary, and permanent injunctive relief enjoining Gonzalez from any further violation of the Gonzalez Agreement, including the non-compete, non-solicitation, and confidential information provisions.

48.     In the alternative and/or in addition to such relief, as a direct and proximate result of Gonzalez's breach and continuing breach of the Gonzalez Agreement, TQL has suffered

monetary damages in an amount to be proven at trial, but believed to exceed the jurisdictional minimum of this Court.

49.     Pursuant to the Gonzalez Agreement, TQL is also entitled independently to recover the attorney's fees expended as a result of Gonzalez's violation of such agreement, in an amount to be proven at trial and/or through appropriate post-trial motions.

## COUNT THREE:  BREACH OF CONTRACT

### (Against Cardenas)

50.     TQL restates and realleges the preceding paragraphs of this Complaint by reference.

51.     The Cardenas Agreement is a valid and legally enforceable contract that TQL and Cardenas entered into freely and without duress.

52.     In exchange for his commitment to be bound by the Cardenas Agreement, Cardenas received adequate and sufficient consideration, including, without limitation, ongoing employment, extensive training, and continued access to TQL's confidential information to assist with his professional development.

53.     The Cardenas Agreement provides for a one-year period following employment during which Cardenas is prohibited from, among other things, accepting employment or affiliation or association with a competing business, of which PGL, which has brokerage authority just like TQL, is one; and from soliciting TQL's customers, carriers, or employees.  The Cardenas Agreement also prohibits the use and disclosure, for the benefit of anyone other than TQL, of TQL's confidential information, including customer- and carrier-related information, rate information, and training materials.

11

54.     Cardenas has breached and continues to breach the Cardenas Agreement by virtue of the fact that he has accepted and maintained employment in the same or similar position with PGL; and, upon information and belief, through such employment, used or disclosed TQL's confidential information, solicited its customers, carriers, or employees, and/or otherwise competed with TQL, prior to the expiration of the one-year restrictive covenant.

55.     Unless immediately restrained and enjoined, Cardenas will cause harm, damage, and injury to TQL for which it has no adequate remedy at law.

56.     Therefore, consistent with this Verified Complaint and the contemporaneously filed Motion for a Temporary Restraining Order and Preliminary Injunction, TQL prays that the Court issue immediate, preliminary, and permanent injunctive relief enjoining Cardenas from any further violation of the Cardenas Agreement, including the non-compete, non-solicitation, and confidential information provisions.

57.     In the alternative and/or in addition to such relief, as a direct and proximate result of Cardenas' breach and continuing breach of the Cardenas Agreement, TQL has suffered monetary damages in an amount to be proven at trial, but believed to exceed the jurisdictional minimum of this Court.

58.     Pursuant to the Cardenas Agreement, TQL is also entitled independently to recover the attorney's fees expended as a result of Cardenas' violation of such agreement, in an amount to be proven at trial and/or through appropriate post-trial motions.

## COUNT FOR: MISAPPROPRIATION OF TRADE SECRETS

### (Against All Defendants)

59.     TQL restates and realleges the preceding paragraphs of this Complaint by reference.

60. The confidential TQL information identified above—in particular, the information TQL maintains regarding its customers and carriers, rates, and training—are TQL's trade secrets subject to protection under the Ohio Uniform Trade Secrets Act, R.C. 1333.61, *et seq.*

61. Defendants each acknowledged in their respective agreements that the confidential TQL information identified above, *inter alia*, constitutes TQL's trade secrets.

62. This information derives independent economic value by not being readily known or ascertainable through proper means by other persons who can obtain economic value from its disclosure or use—namely, TQL's competitors.

63. TQL has spent much time over many years and invested significant sums, in terms of both financial and human resources, to develop and maintain this information.

64. This information is the subject of reasonable efforts by TQL to maintain its secrecy, including conditioning employee access it is system upon use of constantly changing passwords, restricting employees from downloading or printing certain information, and requiring all employees to agree sign an agreement containing confidentiality and restrictive covenant provisions similar to those included in Defendants' respective agreements.

65. Defendants' misconduct and wrongful taking of this information constitutes misappropriation under the Ohio Uniform Trade Secrets Act because they have used, threatened to use, and/or inevitably will use this information on behalf of PGL.

66. At the time Defendants misappropriated TQL's trade secrets, they knew they acquired those trade secrets by improper means, and had clear knowledge that they only had access to the protected information under circumstances giving rise to a duty maintain the information's secrecy.

67.     Pursuant to Section 1333.63, TQL is entitled to monetary damages as a result of Defendants' misappropriation of trade secrets, including the loss due to such misappropriation, unjust enrichment gained as a result of such misappropriation, and/or the imposition of a reasonable royalty for his unauthorized conduct.

68.     In addition, TQL is entitled to injunctive relief pursuant to Section 1333.62(A) as a result of Defendants' conduct, which have provided them with a commercial advantage, and attorney's fees pursuant to Section 1333.64 because their conduct was and is willful and malicious.

## COUNT FIVE:  TORTIOUS INTERFERENCE

### (Against All Defendants)

69.     TQL restates and realleges the preceding paragraphs of this Complaint by reference.

70.     TQL has relationships with customers and motor carriers of which Defendants are aware.

71.     Defendants knew and know that TQL had a reasonable expectation of continuing such business relations, and nevertheless used, threatened to use, or will inevitably use improper means to damage, interfere with, or cause the severance of such relations, by acting for the benefit of and to the detriment of TQL, by soliciting TQL customers, and by diverting TQL's motor carrier resources and/or utilizing motor carriers directly to cut out TQL from transactions.

72.     Defendants lack any justification or privilege to act, continue to act, or inevitably will act, in the manner described above.

73.     As a consequence of the foregoing, TQL has suffered and will continue to suffer irreparable harm and loss and has no adequate remedy at law unless this conduct is immediately enjoined.

74.    In addition, TQL has suffered monetary damages as a proximate cause of such conduct, in an amount to be proven at trial but believed to exceed the jurisdictional minimum of this Court.

75.    Because Defendants' conduct is and will continue to be willful and malicious, TQL is also entitled to an award of punitive damages.

**PRAYER FOR RELIEF**

**WHEREFORE**, TQL respectfully requests that this Court issue a judgment as follows:

a)    Issue immediate, preliminary, and permanent injunctive relief prohibiting Defendants from any further violation of their respective agreements with TQL, including the non-compete, non-solicitation, and confidential information provisions, plus attorney's fees as provided in such agreements;

b)    Issue immediate, preliminary, and permanent injunctive relief pursuant to Section 1333.62, prohibiting Defendants from using or disclosing TQL's trade secret information, plus attorney's fees as provided in Section 1333.64;

c)    Issue immediate, preliminary, and permanent injunctive relief pursuant to Section 1333.62, prohibiting Defendants from tortiously interfering with TQL's business relationships with customers and motor carriers;

d)    Award compensatory damages in favor of TQL in an amount to be determined at trial in excess of $25,000.00;

e)    Punitive damages

f)    Court costs, prejudgment interest, and post-judgment interest; and

g)    Any other relief that this Court deems just and proper.

Respectfully Submitted,

*/s/ Matthew J. Wiles*
Matthew J. Wiles (0075455)
DINSMORE & SHOHL LLP
191 W. Nationwide Blvd., Suite 300
Columbus, Ohio 43215
Telephone: 614-628-6880
Facsimile: 614-628-6890
matthew.wiles@dinsmore.com

**Counsel for Plaintiff Total Quality
Logistics, LLC**

## VERIFICATION OF COMPLAINT

STATE OF OHIO          )

COUNTY OF CLERMONT     )

     I, Marc Bostwick, being duly cautioned and sworn, state that I am authorized to act as an agent of Plaintiff for the purpose of verifying the Complaint herein in accordance with the Ohio Rules of Civil Procedure.  To the extent I have personal knowledge of the matters alleged in the Complaint, the information is true and accurate to the best of my knowledge and belief.  As to any matters for which I do not have personal knowledge, I am authorized by Plaintiff to state that Plaintiff is informed and believes that the allegations of the Complaint are true and accurate to the best of its knowledge and belief.

Marc Bostwick

Subscribed and sworn by _Marc Bostwick_ before me, a Notary Public, on this 6th day of April, 2022.

Notary Public

**KELLY A. PIERRO**
Notary Public, State of Ohio
My Commission Expires
July 22, 2023

17

**TOTAL QUALITY LOGISTICS, LLC**

<u>**Employee Non-Compete, Confidentiality and Non-Solicitation Agreement**</u>

**(Texas)**

This Employee Non-Compete, Confidentiality and Non-Solicitation Agreement ("Agreement") is entered into by and between Total Quality Logistics, LLC ("TQL"), 4289 Ivy Pointe Blvd., Cincinnati, Ohio 45245, and the Employee whose name is set forth below his or her signature on the last page of this Agreement and whose address is on file with TQL ("Employee"). Performance under this Agreement will begin on the date Employee's employment with TQL actively begins.

<u>**RECITALS:**</u>

**WHEREAS**, TQL is an Ohio limited liability company providing shipping services, third-party logistics services, freight brokerage services, truck brokerage services, and supply-chain management services throughout the Continental United States. References to TQL in this Agreement refer to TQL, its parent and subsidiary companies, all related entities, and its successors and assigns;

**WHEREAS**, TQL is unique within the organizations providing shipping services, third-party logistics services, freight brokerage services, truck brokerage services, and supply-chain management services (the "Industry"). TQL has spent extensive time developing its goodwill and its relationships with Customers, Motor Carriers, suppliers, and others within the Industry. TQL provides extensive training on ways to succeed within the Industry. TQL also provides tools, such as proprietary software, that are unique within the Industry. The relationships, tools, and training developed by TQL will assist Employee in gaining intimate knowledge of TQL's business model, its Customers, Motor Carriers, suppliers, contact information, lanes, pricing, sales strategy, service, and other confidential and proprietary information. The knowledge learned at TQL is unlike what could be learned elsewhere within the Industry. TQL takes steps to protect the confidentiality of this information and it would have value to a TQL competitor. Employee, therefore, acknowledges and agrees that what Employee learns and is trained in at TQL would necessarily cause unfair competition if Employee took employment competitive to TQL;

**WHEREAS**, TQL develops and maintains confidential proprietary information (hereinafter referred to as, "Confidential Information"), including but not limited to, its operating policies and procedures; computer databases; computer software; methods of computer software development and utilization; computer source codes; financial records, including but not limited to, credit history and information about Customers and potential Customers, Motor Carriers, and suppliers; information about transactions, pricing, the manner and mode of doing business, and the terms of business dealings and relationships with Customers and Motor Carriers; financial and operating controls and procedures; contracts and agreements of all kinds, including those with Customers, Motor Carriers, and vendors; pricing, marketing, and sales lists and strategies; Customer lists and Motor Carrier lists including contact names, physical and email addresses, telephone numbers, and other information about them; trade secrets; correspondence; accounts; business policies; purchasing information; functions and records; logistics management; and data, processes, and procedures. Confidential Information also includes any

**EXHIBIT A**

information described above which TQL obtains from another company and which TQL treats as proprietary or designates as Confidential Information, whether or not owned or developed by TQL. This information may be in tangible written form, computer databases, or it may be represented and communicated solely by oral expressions or business activities which are not reduced to written form. Confidential Information may be protected by patents, copyrights, or other means of protection. Confidential Information does not include information that is protected by the National Labor Relations Act ("NLRA"), and nothing in this Agreement shall be interpreted to prohibit employees from engaging in protected activity under the NLRA, including without limitation discussing wages, hours, or terms and conditions of employment. TQL will not prohibit or discipline any of its employees from or for discussing their wages, hours, or other terms and conditions of employment or engaging in any other activity protected by the NLRA;

**WHEREAS**, Employee agrees that any and all such Confidential Information set forth above, whether or not formally designated as such, is vital to the success of TQL's business and Employee understands that all such Confidential Information is the exclusive property of TQL, that it is to be treated and maintained as confidential proprietary information by Employee, and that it is treated and maintained as confidential proprietary information by TQL;

**WHEREAS**, in order to allow TQL to remain effective and competitive in the marketplace in which it conducts its business, and to maintain its business relationships on the basis of trust and confidence, it is essential that all Confidential Information remain protected from unauthorized disclosure, dissemination, and use, except as authorized and required by TQL to enable Employee to properly perform his or her work in the normal course of TQL's business;

**WHEREAS**, Employee acknowledges that unauthorized use or disclosure of Confidential Information as defined herein would cause, or be likely to cause, substantial and irreparable harm and detriment to TQL and would constitute unreasonable and unfair competition to TQL;

**WHEREAS**, Employee acknowledges that TQL's Customer and Motor Carrier lists, other information about TQL's Customers and Motor Carriers, its Load Management System, and other Confidential Information, are proprietary trade secrets with significant economic value, are compiled through a substantial investment of time and money by TQL, and are not common knowledge throughout the Industry;

**WHEREAS**, in the course and scope of employment by TQL, Employee must be given access to such Confidential Information from time-to-time or continuously, in order to effectively perform his or her job duties; and

**WHEREAS**, Employee desires to be employed by TQL and TQL will not agree to employ or continue to employ Employee, unless Employee signs this Agreement and agrees to be bound by it.

**NOW THEREFORE**, in consideration of the employment or continued employment of Employee by TQL and TQL's providing to Employee specialized training unique to TQL and confidential, proprietary, trade secret information of the type and nature described in the Recitals and herein, along with compensation and benefits provided by TQL, and the terms, conditions, and covenants, set forth herein, which Employee considers adequate consideration for the promises contained herein, TQL and Employee agree as follows:

TX                                              2

1.    <u>Recitals</u>.  The "Recitals" set forth above are hereby restated and incorporated herein by reference as though fully set forth again.

2.    <u>Employee Duties</u>.  Employee shall undertake and assume the responsibility of performing for and on behalf of TQL whatever duties shall be assigned to Employee by TQL at any time and from time-to-time.  It is further understood that TQL retains the right to modify Employee's duties at any time and, in its discretion, determine Employee's compensation, including but not limited to, any salary, other cash compensation, and benefits.

3.    <u>At-will Employment</u>.  Employee is an employee at-will.  Nothing in this Agreement changes Employee's status as an at-will employee.  Either TQL or Employee may terminate Employee's employment for any reason at any time.

4.    <u>TQL Owns Confidential Information</u>.  All Confidential Information as described herein is proprietary and the sole property of TQL.

5.    <u>Confidential Information Is for TQL's Use Only</u>.  Unless Employee has prior written consent from TQL, Employee shall not at any time during the course of his or her employment by TQL, and at all times thereafter, use for any purpose or publish, copy, disclose, or communicate to any individual, firm, corporation, or other business entity other than TQL, any Confidential Information, except as properly necessary and authorized by TQL in the conduct of TQL's business or as required by law.  Employee agrees that all information related to TQL's business and disclosed to Employee or to which Employee has access during the period of his or her employment shall be presumed to be Confidential Information hereunder if there is any reasonable basis to believe it to be Confidential Information or if TQL appears to treat it as confidential.

6.    <u>Return of Company Property</u>.  Upon termination of employment or upon request by TQL for any reason, Employee will immediately deliver to TQL all originals and all copies of all documents and other materials obtained from or belonging to TQL, including but not limited to all Confidential Information, regardless of form, in Employee's possession, custody, or control, including but not limited to any TQL files, documents (including any containing customer information), computer data, or other media however stored, and Employee will retain no copy of any such document, data, or other materials.

7.    <u>Presumption Regarding Confidential Information</u>.  Employee agrees that, during the time limits of the covenants identified in Section 9(b), Employee's engaging in any form of employment relationship with a Competing Business, as defined in Section 9 below, will be presumed to necessarily result in Employee revealing, basing judgments and decisions upon, or otherwise using TQL's Confidential Information to unfairly compete with TQL.

8.    <u>Property Rights and Assignment</u>.  Employee agrees that any work, invention, product design, or technological innovation created, conceived, developed, produced, generated, and/or improved by Employee, whether or not patentable, or subject to copyright, trademark, or trade secret protection, at any time during or arising out of Employee's employment with TQL that results from, is suggested by, or relates to any work which Employee does for TQL, shall be the absolute property of TQL and shall promptly be disclosed by Employee to TQL.  Employee hereby assigns any and all right, title, and interest in any work product to TQL, including assigning any and all rights to any future invention arising out of or relating to Employee's

TX                                3

employment with TQL. To the extent necessary, during employment and thereafter, Employee shall sign applications, assignments, and any other papers that TQL may consider necessary or helpful in perfecting and enforcing TQL's rights in, and to, any such invention, improvement, and/or technological innovation.

9.      Covenants and Remedies.

(a)     Agreement to Covenants and Material Breach. The Employee hereby covenants and agrees to the terms and conditions of the restrictive covenants and agreements set forth in Sections 4 through 9 of this Agreement, and agrees that any breach thereof shall constitute a material breach by the Employee of his or her obligations under this Agreement.

(b)     Covenants. Employee agrees that, during the course of his or her employment (except as required in the course of Employee's employment with TQL), and for a period of one (1) year after termination or cessation of Employee's employment for any reason:

(i) Employee will not, directly or indirectly, own, operate, maintain, consult with, be employed by (including self-employment), engage in, or have any other interest (whether as an owner, shareholder, officer, director, partner, member, employee, joint venture, beneficiary, independent contractor, agent, or any other interest) in any Competing Business (as defined below), except the ownership of less than 1% of the outstanding equity securities of any publicly-held corporation or entity;

(ii) Employee will not directly or indirectly, either as an employee, agent, consultant, contractor, officer, owner, or in any other capacity or manner whatsoever, whether or not for compensation, participate in any transportation-intermediary business or be employed by or associated with any Competing Business as more fully defined below;

(iii) Employee will not, directly or indirectly, solicit any Customer, Motor Carrier, client, consultant, supplier, vendor, lessee, or lessor, or take any action, to divert business from TQL;

(iv) Employee will not, directly or indirectly, interfere with, tamper with, disrupt, use, or attempt to disrupt any contractual or other relationship, or prospective relationship, between TQL and any Customer, Motor Carrier, client, consultant, supplier, vendor, lessee, or lessor of TQL;

(v) Employee will not, directly or indirectly employ, recruit, solicit, or assist others in employing, recruiting, or soliciting any person who is, or within the previous twelve (12) months has been, an employee of, consultant with, or been party to another business relationship with TQL; and

(vi) It is further understood and agreed that the running of the one (1) year set forth in this Paragraph shall be tolled during any time period during which Employee violates any provision of this Agreement.

(c)     Trade Secrets. The Employee recognizes and acknowledges that TQL's trade secrets, Customer lists, Motor Carrier lists, Load Management System, private processes, and other Confidential Information as they may exist from time to time are valuable, special, and

TX                                                        4

unique assets of TQL's business, access to and knowledge of which are essential to performance of Employee's duties hereunder. Employee will not hereafter disclose such trade secrets, Customer lists, Motor Carrier lists, Load Management System, private processes, and other Confidential Information to any person, firm, corporation, association, or other entity for any reason or purpose whatsoever, except as required by law, nor shall Employee make use of any such property for Employee's own purpose or the benefit of any person, firm, corporation, association, or any entity other than TQL under any circumstance.

(d)     Reasonableness of Restrictions.     Employee recognizes that the foregoing geographic, duration, and content restrictions are reasonable and properly required for the adequate protection of the business of TQL from the disclosure of Confidential Information and unfair competition.

(e)     Injunction. If there is a breach or threatened breach of any part of this Agreement, TQL shall be entitled to an injunction restraining Employee from such breach or threatened breach. Alternatively and additionally, TQL, in its sole discretion, may pursue a claim for damages in tort and/or contract resulting from any breach or threatened breach of this Agreement by Employee. If Employee is found by a court of competent jurisdiction to have violated the terms of this Agreement, Employee shall be liable for costs, expenses, and reasonable attorneys' fees incurred by TQL.

(f)     For purposes of this Agreement, the term: (i) "Customer" is any individual, business, or other entity, for whom TQL has rendered any service, or with respect to which TQL has planned and/or made contact for the purpose of rendering any service, within the twenty-four (24) months immediately preceding the termination or cessation of Employee's employment; (ii) "Motor Carrier" is any over-the-road shipper, carrier, trucker, or hauling business that has transported freight for any TQL Customer as a result of a relationship, dealings, arrangements, or communications with TQL, or with respect to which TQL has planned and/or made contact for this purpose, within the twenty-four (24) months immediately preceding the termination or cessation of Employee's employment; (iii) "Competing Business" is any person, firm, corporation, or entity that is engaged in shipping, third-party logistics, freight brokerage, truck brokerage, or supply-chain management services anywhere in the Continental United States; and (iv) "solicit" includes, but is not limited to, any efforts in any form intended to take business away from, intercept, or interfere with the business of TQL, including relationships with TQL and its employees, Customers, Motor Carriers, clients, consultants, suppliers, vendors, lessees, lessors, and employees, and specifically, including doing business with any Customer or Motor Carrier.

(g)     Pursuant to the Defense of Trade Secrets Act, 18 U.S.C. § 1833(b), an individual shall not be held criminally or civilly liable under any Federal or State trade secret law for the disclosure of a trade secret that is made (1) in confidence to a Federal, State, or local government official, either directly or indirectly, or to an attorney; and solely for the purpose of reporting or investigating a suspected violation of law; or (2) in a complaint or other document filed in a lawsuit or other proceeding, if such filing is made under seal. An individual who files a lawsuit for retaliation by an employer for reporting a suspected violation of law may disclose the trade secret to the attorney of the individual and use the trade secret information in the court proceeding, if the individual files any document containing the trade secret under seal and does not disclose the trade secret, except pursuant to the court order.

TX                                          5

10.   <u>Governing Law, Jurisdiction, and Venue</u>.   This Agreement shall be interpreted and enforced under the laws of the State of Ohio, without giving effect to conflict of law provisions which would result in the application of any law other than Ohio law.   Any action, suit, or proceeding with respect to or arising out of this Agreement shall be brought in the Court of Common Pleas, Clermont County, Ohio, the Travis County, Texas Civil County Courts, or in the United States District Court for the Western District of Texas.   Further, Employee hereby submits to the personal jurisdiction of the state and/or federal courts identified in this Section, consents to service of process therefrom, and waives any other requirements with respect to personal jurisdiction, venue, or service of process.

11.   <u>Severability</u>.   Should any of the provisions of this Agreement be declared or determined to be illegal or invalid, (a) the validity of the remaining parts, terms, or provisions shall not be affected thereby and said illegal or invalid part, term, or provision shall be deemed not a part of this Agreement; (b) the remaining provisions of this Agreement shall remain in full force and effect and shall not be affected by such illegal, invalid, or unenforceable provision or by its severance from this Agreement; and (c) there shall be added automatically as a part of this Agreement a provision as similar in terms to such illegal, invalid, or unenforceable provision as may be possible and still be legal, valid, and enforceable.

12.   <u>Personnel Policies</u>.   Employee agrees to abide by TQL's rules, regulations, policies, and practices, written and to the extent that Employee has actual knowledge thereof, unwritten, as they may from time to time be adopted or modified by TQL at its sole discretion.   TQL's written rules, policies, practices, and procedures shall be binding on Employee unless superseded by or in conflict with this Agreement, in which case this Agreement shall govern.   However, such rules, policies, practices, and procedures are not part of this Agreement and whether written, oral or implied, shall not create any contract between Employee and TQL at any time.   Additional contractual obligations or other modifications of this Agreement may be made only by an express written agreement between Employee and TQL.

13.   <u>No Conflicting Employee Agreement</u>.   Employee represents that Employee is not bound by any agreement or contract or other duty to a former employer or any other party which would prevent Employee from complying with any obligations hereunder or performing his or her duties as an employee of TQL.

14.   <u>Acknowledgments</u>.   Employee acknowledges and agrees that he or she:

(a) has had sufficient time within which to consider this Agreement before executing it;
(b) has carefully read and fully understands all of the provisions of this Agreement;
(c) knowingly and voluntarily agrees to all of the terms set forth in this Agreement;
(d) knowingly and voluntarily intends to be legally bound by this Agreement;
(e) has had sufficient opportunity to obtain and consult with his or her own lawyer regarding this Agreement; and
(f) has knowingly and voluntarily executed this Agreement.

15.   <u>Binding Agreement</u>.   This Agreement shall be binding and enforceable upon the parties hereto, their heirs, representatives, successors, and assigns.   This Agreement is not assignable by Employee, but is fully assignable by TQL without notice or consent from the Employee.

TX                                              6

16.   Entire Agreement.  This Agreement sets forth the entire agreement between the parties hereto pertaining to the subject of this Agreement, and fully supersedes in all respects any and all prior oral or written agreements or understandings between the parties hereto pertaining to the subject of this Agreement, including, but not limited to, the prior non-compete.   This Agreement may be amended or modified only upon a written agreement signed by both of the parties hereto.   This Agreement may be executed in counterparts, each of which shall be deemed an original and all of which taken together shall constitute one Agreement.

**IN WITNESS WHEREOF**, the parties agree that this Agreement may be signed by electronic means, and by their electronic endorsement through TQL's system or their physical signature below, the parties intend to sign this Agreement and acknowledge that they have read this Agreement in its entirety; understand the terms of this Agreement; have had the opportunity to consult with legal counsel regarding the terms of this Agreement; and knowingly, voluntarily, and willfully enter into this Agreement without any duress or coercion of any kind.

**EMPLOYEE:**                                              **TOTAL QUALITY LOGISTICS, LLC**

| 12/24/2019 | | Non-Compete (Texas 12-15-19).pdf | e-signature | Cesar Medellin (Terminated) (33617) | 09/21/2020 12:35:09 PM | By selecting the "I Agree" button below, I acknowledge that I have received this document; read it in its entirety; understand the terms, conditions and requirements the document places on me; have had the opportunity to consult with legal counsel regarding the terms of the document; and knowingly, voluntarily, and willfully agree to comply with the terms of the document. |
| 12/24/2019 | | Non-Compete (Texas 12-15-19).pdf | e-signature | Chris Brown (03776) | 09/21/2020 12:59:02 PM | By selecting the "I Agree" button below, I acknowledge that I have received this document; read it in its entirety; understand the terms, conditions and requirements the document places on me; have had the opportunity to consult with legal counsel regarding the terms of the document; and knowingly, voluntarily, and willfully agree to comply with the terms of the document. |

TX                                                       7

**TOTAL QUALITY LOGISTICS, LLC**

**Employee Non-Compete, Confidentiality and Non-Solicitation Agreement**

**(Texas)**

This Employee Non-Compete, Confidentiality and Non-Solicitation Agreement ("Agreement") is entered into by and between Total Quality Logistics, LLC ("TQL"), 4289 Ivy Pointe Blvd., Cincinnati, Ohio 45245, and the Employee whose name is set forth below his or her signature on the last page of this Agreement and whose address is on file with TQL ("Employee"). Performance under this Agreement will begin on the date Employee's employment with TQL actively begins.

**RECITALS:**

**WHEREAS**, TQL is an Ohio limited liability company providing shipping services, third-party logistics services, freight brokerage services, truck brokerage services, and supply-chain management services throughout the Continental United States.  References to TQL in this Agreement refer to TQL, its parent and subsidiary companies, all related entities, and its successors and assigns;

**WHEREAS**, TQL is unique within the organizations providing shipping services, third-party logistics services, freight brokerage services, truck brokerage services, and supply-chain management services (the "Industry").  TQL has spent extensive time developing its goodwill and its relationships with Customers, Motor Carriers, suppliers, and others within the Industry. TQL provides extensive training on ways to succeed within the Industry.  TQL also provides tools, such as proprietary software, that are unique within the Industry.  The relationships, tools, and training developed by TQL will assist Employee in gaining intimate knowledge of TQL's business model, its Customers, Motor Carriers, suppliers, contact information, lanes, pricing, sales strategy, service, and other confidential and proprietary information.  The knowledge learned at TQL is unlike what could be learned elsewhere within the Industry.  TQL takes steps to protect the confidentiality of this information and it would have value to a TQL competitor. Employee, therefore, acknowledges and agrees that what Employee learns and is trained in at TQL would necessarily cause unfair competition if Employee took employment competitive to TQL;

**WHEREAS**, TQL develops and maintains confidential proprietary information (hereinafter referred to as, "Confidential Information"), including but not limited to, its operating policies and procedures; computer databases; computer software; methods of computer software development and utilization; computer source codes; financial records, including but not limited to, credit history and information about Customers and potential Customers, Motor Carriers, and suppliers; information about transactions, pricing, the manner and mode of doing business, and the terms of business dealings and relationships with Customers and Motor Carriers; financial and operating controls and procedures; contracts and agreements of all kinds, including those with Customers, Motor Carriers, and vendors; pricing, marketing, and sales lists and strategies; Customer lists and Motor Carrier lists including contact names, physical and email addresses, telephone numbers, and other information about them; trade secrets; correspondence; accounts; business policies; purchasing information; functions and records; logistics management; and data, processes, and procedures.  Confidential Information also includes any

TX                                                                 1

**EXHIBIT B**

information described above which TQL obtains from another company and which TQL treats as proprietary or designates as Confidential Information, whether or not owned or developed by TQL. This information may be in tangible written form, computer databases, or it may be represented and communicated solely by oral expressions or business activities which are not reduced to written form. Confidential Information may be protected by patents, copyrights, or other means of protection. Confidential Information does not include information that is protected by the National Labor Relations Act ("NLRA"), and nothing in this Agreement shall be interpreted to prohibit employees from engaging in protected activity under the NLRA, including without limitation discussing wages, hours, or terms and conditions of employment. TQL will not prohibit or discipline any of its employees from or for discussing their wages, hours, or other terms and conditions of employment or engaging in any other activity protected by the NLRA;

**WHEREAS**, Employee agrees that any and all such Confidential Information set forth above, whether or not formally designated as such, is vital to the success of TQL's business and Employee understands that all such Confidential Information is the exclusive property of TQL, that it is to be treated and maintained as confidential proprietary information by Employee, and that it is treated and maintained as confidential proprietary information by TQL;

**WHEREAS**, in order to allow TQL to remain effective and competitive in the marketplace in which it conducts its business, and to maintain its business relationships on the basis of trust and confidence, it is essential that all Confidential Information remain protected from unauthorized disclosure, dissemination, and use, except as authorized and required by TQL to enable Employee to properly perform his or her work in the normal course of TQL's business;

**WHEREAS**, Employee acknowledges that unauthorized use or disclosure of Confidential Information as defined herein would cause, or be likely to cause, substantial and irreparable harm and detriment to TQL and would constitute unreasonable and unfair competition to TQL;

**WHEREAS**, Employee acknowledges that TQL's Customer and Motor Carrier lists, other information about TQL's Customers and Motor Carriers, its Load Management System, and other Confidential Information, are proprietary trade secrets with significant economic value, are compiled through a substantial investment of time and money by TQL, and are not common knowledge throughout the Industry;

**WHEREAS**, in the course and scope of employment by TQL, Employee must be given access to such Confidential Information from time-to-time or continuously, in order to effectively perform his or her job duties; and

**WHEREAS**, Employee desires to be employed by TQL and TQL will not agree to employ or continue to employ Employee, unless Employee signs this Agreement and agrees to be bound by it.

**NOW THEREFORE**, in consideration of the employment or continued employment of Employee by TQL and TQL's providing to Employee specialized training unique to TQL and confidential, proprietary, trade secret information of the type and nature described in the Recitals and herein, along with compensation and benefits provided by TQL, and the terms, conditions, and covenants, set forth herein, which Employee considers adequate consideration for the promises contained herein, TQL and Employee agree as follows:

TX                                          2

1.    <u>Recitals</u>.  The "Recitals" set forth above are hereby restated and incorporated herein by reference as though fully set forth again.

2.    <u>Employee Duties</u>.  Employee shall undertake and assume the responsibility of performing for and on behalf of TQL whatever duties shall be assigned to Employee by TQL at any time and from time-to-time.  It is further understood that TQL retains the right to modify Employee's duties at any time and, in its discretion, determine Employee's compensation, including but not limited to, any salary, other cash compensation, and benefits.

3.    <u>At-will Employment</u>.  Employee is an employee at-will.  Nothing in this Agreement changes Employee's status as an at-will employee.  Either TQL or Employee may terminate Employee's employment for any reason at any time.

4.    <u>TQL Owns Confidential Information</u>.  All Confidential Information as described herein is proprietary and the sole property of TQL.

5.    <u>Confidential Information Is for TQL's Use Only</u>.  Unless Employee has prior written consent from TQL, Employee shall not at any time during the course of his or her employment by TQL, and at all times thereafter, use for any purpose or publish, copy, disclose, or communicate to any individual, firm, corporation, or other business entity other than TQL, any Confidential Information, except as properly necessary and authorized by TQL in the conduct of TQL's business or as required by law.  Employee agrees that all information related to TQL's business and disclosed to Employee or to which Employee has access during the period of his or her employment shall be presumed to be Confidential Information hereunder if there is any reasonable basis to believe it to be Confidential Information or if TQL appears to treat it as confidential.

6.    <u>Return of Company Property</u>.  Upon termination of employment or upon request by TQL for any reason, Employee will immediately deliver to TQL all originals and all copies of all documents and other materials obtained from or belonging to TQL, including but not limited to all Confidential Information, regardless of form, in Employee's possession, custody, or control, including but not limited to any TQL files, documents (including any containing customer information), computer data, or other media however stored, and Employee will retain no copy of any such document, data, or other materials.

7.    <u>Presumption Regarding Confidential Information</u>.  Employee agrees that, during the time limits of the covenants identified in Section 9(b), Employee's engaging in any form of employment relationship with a Competing Business, as defined in Section 9 below, will be presumed to necessarily result in Employee revealing, basing judgments and decisions upon, or otherwise using TQL's Confidential Information to unfairly compete with TQL.

8.    <u>Property Rights and Assignment</u>.  Employee agrees that any work, invention, product design, or technological innovation created, conceived, developed, produced, generated, and/or improved by Employee, whether or not patentable, or subject to copyright, trademark, or trade secret protection, at any time during or arising out of Employee's employment with TQL that results from, is suggested by, or relates to any work which Employee does for TQL, shall be the absolute property of TQL and shall promptly be disclosed by Employee to TQL.  Employee hereby assigns any and all right, title, and interest in any work product to TQL, including assigning any and all rights to any future invention arising out of or relating to Employee's

TX                                        3

employment with TQL. To the extent necessary, during employment and thereafter, Employee shall sign applications, assignments, and any other papers that TQL may consider necessary or helpful in perfecting and enforcing TQL's rights in, and to, any such invention, improvement, and/or technological innovation.

9.    Covenants and Remedies.

(a)    Agreement to Covenants and Material Breach. The Employee hereby covenants and agrees to the terms and conditions of the restrictive covenants and agreements set forth in Sections 4 through 9 of this Agreement, and agrees that any breach thereof shall constitute a material breach by the Employee of his or her obligations under this Agreement.

(b)    Covenants. Employee agrees that, during the course of his or her employment (except as required in the course of Employee's employment with TQL), and for a period of one (1) year after termination or cessation of Employee's employment for any reason:

(i) Employee will not, directly or indirectly, own, operate, maintain, consult with, be employed by (including self-employment), engage in, or have any other interest (whether as an owner, shareholder, officer, director, partner, member, employee, joint venture, beneficiary, independent contractor, agent, or any other interest) in any Competing Business (as defined below), except the ownership of less than 1% of the outstanding equity securities of any publicly-held corporation or entity;

(ii) Employee will not directly or indirectly, either as an employee, agent, consultant, contractor, officer, owner, or in any other capacity or manner whatsoever, whether or not for compensation, participate in any transportation-intermediary business or be employed by or associated with any Competing Business as more fully defined below;

(iii) Employee will not, directly or indirectly, solicit any Customer, Motor Carrier, client, consultant, supplier, vendor, lessee, or lessor, or take any action, to divert business from TQL;

(iv) Employee will not, directly or indirectly, interfere with, tamper with, disrupt, use, or attempt to disrupt any contractual or other relationship, or prospective relationship, between TQL and any Customer, Motor Carrier, client, consultant, supplier, vendor, lessee, or lessor of TQL;

(v) Employee will not, directly or indirectly employ, recruit, solicit, or assist others in employing, recruiting, or soliciting any person who is, or within the previous twelve (12) months has been, an employee of, consultant with, or been party to another business relationship with TQL; and

(vi) It is further understood and agreed that the running of the one (1) year set forth in this Paragraph shall be tolled during any time period during which Employee violates any provision of this Agreement.

(c)    Trade Secrets. The Employee recognizes and acknowledges that TQL's trade secrets, Customer lists, Motor Carrier lists, Load Management System, private processes, and other Confidential Information as they may exist from time to time are valuable, special, and

TX                                                                                            4

unique assets of TQL's business, access to and knowledge of which are essential to performance of Employee's duties hereunder. Employee will not hereafter disclose such trade secrets, Customer lists, Motor Carrier lists, Load Management System, private processes, and other Confidential Information to any person, firm, corporation, association, or other entity for any reason or purpose whatsoever, except as required by law, nor shall Employee make use of any such property for Employee's own purpose or the benefit of any person, firm, corporation, association, or any entity other than TQL under any circumstance.

(d)    <u>Reasonableness of Restrictions</u>.    Employee recognizes that the foregoing geographic, duration, and content restrictions are reasonable and properly required for the adequate protection of the business of TQL from the disclosure of Confidential Information and unfair competition.

(e)    <u>Injunction</u>.  If there is a breach or threatened breach of any part of this Agreement, TQL shall be entitled to an injunction restraining Employee from such breach or threatened breach.   Alternatively and additionally, TQL, in its sole discretion, may pursue a claim for damages in tort and/or contract resulting from any breach or threatened breach of this Agreement by Employee.  If Employee is found by a court of competent jurisdiction to have violated the terms of this Agreement, Employee shall be liable for costs, expenses, and reasonable attorneys' fees incurred by TQL.

(f)    For purposes of this Agreement, the term: (i) "Customer" is any individual, business, or other entity, for whom TQL has rendered any service, or with respect to which TQL has planned and/or made contact for the purpose of rendering any service, within the twenty-four (24) months immediately preceding the termination or cessation of Employee's employment; (ii) "Motor Carrier" is any over-the-road shipper, carrier, trucker, or hauling business that has transported freight for any TQL Customer as a result of a relationship, dealings, arrangements, or communications with TQL, or with respect to which TQL has planned and/or made contact for this purpose, within the twenty-four (24) months immediately preceding the termination or cessation of Employee's employment; (iii) "Competing Business" is any person, firm, corporation, or entity that is engaged in shipping, third-party logistics, freight brokerage, truck brokerage, or supply-chain management services anywhere in the Continental United States; and (iv) "solicit" includes, but is not limited to, any efforts in any form intended to take business away from, intercept, or interfere with the business of TQL, including relationships with TQL and its employees, Customers, Motor Carriers, clients, consultants, suppliers, vendors, lessees, lessors, and employees, and specifically, including doing business with any Customer or Motor Carrier.

(g)    Pursuant to the Defense of Trade Secrets Act, 18 U.S.C. § 1833(b), an individual shall not be held criminally or civilly liable under any Federal or State trade secret law for the disclosure of a trade secret that is made (1) in confidence to a Federal, State, or local government official, either directly or indirectly, or to an attorney; and solely for the purpose of reporting or investigating a suspected violation of law; or (2) in a complaint or other document filed in a lawsuit or other proceeding, if such filing is made under seal. An individual who files a lawsuit for retaliation by an employer for reporting a suspected violation of law may disclose the trade secret to the attorney of the individual and use the trade secret information in the court proceeding, if the individual files any document containing the trade secret under seal and does not disclose the trade secret, except pursuant to the court order.

TX                                          5

10.    <u>Governing Law, Jurisdiction, and Venue</u>.    This Agreement shall be interpreted and enforced under the laws of the State of Ohio, without giving effect to conflict of law provisions which would result in the application of any law other than Ohio law.    Any action, suit, or proceeding with respect to or arising out of this Agreement shall be brought in the Court of Common Pleas, Clermont County, Ohio, the Travis County, Texas Civil County Courts, or in the United States District Court for the Western District of Texas.  Further, Employee hereby submits to the personal jurisdiction of the state and/or federal courts identified in this Section, consents to service of process therefrom, and waives any other requirements with respect to personal jurisdiction, venue, or service of process.

11.    <u>Severability</u>.  Should any of the provisions of this Agreement be declared or determined to be illegal or invalid, (a) the validity of the remaining parts, terms, or provisions shall not be affected thereby and said illegal or invalid part, term, or provision shall be deemed not a part of this Agreement; (b) the remaining provisions of this Agreement shall remain in full force and effect and shall not be affected by such illegal, invalid, or unenforceable provision or by its severance from this Agreement; and (c) there shall be added automatically as a part of this Agreement a provision as similar in terms to such illegal, invalid, or unenforceable provision as may be possible and still be legal, valid, and enforceable.

12.    <u>Personnel Policies</u>.  Employee agrees to abide by TQL's rules, regulations, policies, and practices, written and to the extent that Employee has actual knowledge thereof, unwritten, as they may from time to time be adopted or modified by TQL at its sole discretion.  TQL's written rules, policies, practices, and procedures shall be binding on Employee unless superseded by or in conflict with this Agreement, in which case this Agreement shall govern.  However, such rules, policies, practices, and procedures are not part of this Agreement and whether written, oral or implied, shall not create any contract between Employee and TQL at any time.  Additional contractual obligations or other modifications of this Agreement may be made only by an express written agreement between Employee and TQL.

13.    <u>No Conflicting Employee Agreement</u>.  Employee represents that Employee is not bound by any agreement or contract or other duty to a former employer or any other party which would prevent Employee from complying with any obligations hereunder or performing his or her duties as an employee of TQL.

14.    <u>Acknowledgments</u>.  Employee acknowledges and agrees that he or she:

        (a) has had sufficient time within which to consider this Agreement before executing it;
        (b) has carefully read and fully understands all of the provisions of this Agreement;
        (c) knowingly and voluntarily agrees to all of the terms set forth in this Agreement;
        (d) knowingly and voluntarily intends to be legally bound by this Agreement;
        (e) has had sufficient opportunity to obtain and consult with his or her own lawyer regarding this Agreement; and
        (f) has knowingly and voluntarily executed this Agreement.

15.    <u>Binding Agreement</u>.  This Agreement shall be binding and enforceable upon the parties hereto, their heirs, representatives, successors, and assigns.  This Agreement is not assignable by Employee, but is fully assignable by TQL without notice or consent from the Employee.

16.     Entire Agreement.  This Agreement sets forth the entire agreement between the parties hereto pertaining to the subject of this Agreement, and fully supersedes in all respects any and all prior oral or written agreements or understandings between the parties hereto pertaining to the subject of this Agreement, including, but not limited to, the prior non-compete.   This Agreement may be amended or modified only upon a written agreement signed by both of the parties hereto.  This Agreement may be executed in counterparts, each of which shall be deemed an original and all of which taken together shall constitute one Agreement.

**IN WITNESS WHEREOF**, the parties agree that this Agreement may be signed by electronic means, and by their electronic endorsement through TQL's system or their physical signature below, the parties intend to sign this Agreement and acknowledge that they have read this Agreement in its entirety; understand the terms of this Agreement; have had the opportunity to consult with legal counsel regarding the terms of this Agreement; and knowingly, voluntarily, and willfully enter into this Agreement without any duress or coercion of any kind.

**EMPLOYEE:**                                      **TOTAL QUALITY LOGISTICS, LLC**

| 12/24/2019 | Non-Compete (Texas 12-15-19).pdf | e-signature | Victor Gonzalez (Terminated) (35584) | 02/22/2021 10:18:15 AM | By selecting the "I Agree" button below, I acknowledge that I have received this document; read it in its entirety; understand the terms, conditions and requirements the document places on me; have had the opportunity to consult with legal counsel regarding the terms of the document; and knowingly, voluntarily, and willfully agree to comply with the terms of the document. |
| 12/24/2019 | Non-Compete (Texas 12-15-19).pdf | e-signature | Chris Brown (03776) | 02/22/2021 10:23:41 AM | By selecting the "I Agree" button below, I acknowledge that I have received this document; read it in its entirety; understand the terms, conditions and requirements the document places on me; have had the opportunity to consult with legal counsel regarding the terms of the document; and knowingly, voluntarily, and willfully agree to comply with the terms of the document. |

TX                                          7

## TOTAL QUALITY LOGISTICS, LLC

### Employee Non-Compete, Confidentiality and Non-Solicitation Agreement

### (Texas)

This Employee Non-Compete, Confidentiality and Non-Solicitation Agreement ("Agreement") is entered into by and between Total Quality Logistics, LLC ("TQL"), 4289 Ivy Pointe Blvd., Cincinnati, Ohio 45245, and the Employee whose name is set forth below his or her signature on the last page of this Agreement and whose address is on file with TQL ("Employee"). Performance under this Agreement will begin on the date Employee's employment with TQL actively begins.

### RECITALS:

**WHEREAS**, TQL is an Ohio limited liability company providing shipping services, third-party logistics services, freight brokerage services, truck brokerage services, and supply-chain management services throughout the Continental United States. References to TQL in this Agreement refer to TQL, its parent and subsidiary companies, all related entities, and its successors and assigns;

**WHEREAS**, TQL is unique within the organizations providing shipping services, third-party logistics services, freight brokerage services, truck brokerage services, and supply-chain management services (the "Industry"). TQL has spent extensive time developing its goodwill and its relationships with Customers, Motor Carriers, suppliers, and others within the Industry. TQL provides extensive training on ways to succeed within the Industry. TQL also provides tools, such as proprietary software, that are unique within the Industry. The relationships, tools, and training developed by TQL will assist Employee in gaining intimate knowledge of TQL's business model, its Customers, Motor Carriers, suppliers, contact information, lanes, pricing, sales strategy, service, and other confidential and proprietary information. The knowledge learned at TQL is unlike what could be learned elsewhere within the Industry. TQL takes steps to protect the confidentiality of this information and it would have value to a TQL competitor. Employee, therefore, acknowledges and agrees that what Employee learns and is trained in at TQL would necessarily cause unfair competition if Employee took employment competitive to TQL;

**WHEREAS**, TQL develops and maintains confidential proprietary information (hereinafter referred to as, "Confidential Information"), including but not limited to, its operating policies and procedures; computer databases; computer software; methods of computer software development and utilization; computer source codes; financial records, including but not limited to, credit history and information about Customers and potential Customers, Motor Carriers, and suppliers; information about transactions, pricing, the manner and mode of doing business, and the terms of business dealings and relationships with Customers and Motor Carriers; financial and operating controls and procedures; contracts and agreements of all kinds, including those with Customers, Motor Carriers, and vendors; pricing, marketing, and sales lists and strategies; Customer lists and Motor Carrier lists including contact names, physical and email addresses, telephone numbers, and other information about them; trade secrets; correspondence; accounts; business policies; purchasing information; functions and records; logistics management; and data, processes, and procedures. Confidential Information also includes any

TX
1

**EXHIBIT C**

information described above which TQL obtains from another company and which TQL treats as proprietary or designates as Confidential Information, whether or not owned or developed by TQL. This information may be in tangible written form, computer databases, or it may be represented and communicated solely by oral expressions or business activities which are not reduced to written form. Confidential Information may be protected by patents, copyrights, or other means of protection. Confidential Information does not include information that is protected by the National Labor Relations Act ("NLRA"), and nothing in this Agreement shall be interpreted to prohibit employees from engaging in protected activity under the NLRA, including without limitation discussing wages, hours, or terms and conditions of employment. TQL will not prohibit or discipline any of its employees from or for discussing their wages, hours, or other terms and conditions of employment or engaging in any other activity protected by the NLRA;

**WHEREAS**, Employee agrees that any and all such Confidential Information set forth above, whether or not formally designated as such, is vital to the success of TQL's business and Employee understands that all such Confidential Information is the exclusive property of TQL, that it is to be treated and maintained as confidential proprietary information by Employee, and that it is treated and maintained as confidential proprietary information by TQL;

**WHEREAS**, in order to allow TQL to remain effective and competitive in the marketplace in which it conducts its business, and to maintain its business relationships on the basis of trust and confidence, it is essential that all Confidential Information remain protected from unauthorized disclosure, dissemination, and use, except as authorized and required by TQL to enable Employee to properly perform his or her work in the normal course of TQL's business;

**WHEREAS**, Employee acknowledges that unauthorized use or disclosure of Confidential Information as defined herein would cause, or be likely to cause, substantial and irreparable harm and detriment to TQL and would constitute unreasonable and unfair competition to TQL;

**WHEREAS**, Employee acknowledges that TQL's Customer and Motor Carrier lists, other information about TQL's Customers and Motor Carriers, its Load Management System, and other Confidential Information, are proprietary trade secrets with significant economic value, are compiled through a substantial investment of time and money by TQL, and are not common knowledge throughout the Industry;

**WHEREAS**, in the course and scope of employment by TQL, Employee must be given access to such Confidential Information from time-to-time or continuously, in order to effectively perform his or her job duties; and

**WHEREAS**, Employee desires to be employed by TQL and TQL will not agree to employ or continue to employ Employee, unless Employee signs this Agreement and agrees to be bound by it.

**NOW THEREFORE**, in consideration of the employment or continued employment of Employee by TQL and TQL's providing to Employee specialized training unique to TQL and confidential, proprietary, trade secret information of the type and nature described in the Recitals and herein, along with compensation and benefits provided by TQL, and the terms, conditions, and covenants, set forth herein, which Employee considers adequate consideration for the promises contained herein, TQL and Employee agree as follows:

TX                                          2

1.    <u>Recitals</u>.  The "Recitals" set forth above are hereby restated and incorporated herein by reference as though fully set forth again.

2.    <u>Employee Duties</u>.  Employee shall undertake and assume the responsibility of performing for and on behalf of TQL whatever duties shall be assigned to Employee by TQL at any time and from time-to-time.  It is further understood that TQL retains the right to modify Employee's duties at any time and, in its discretion, determine Employee's compensation, including but not limited to, any salary, other cash compensation, and benefits.

3.    <u>At-will Employment</u>.  Employee is an employee at-will.  Nothing in this Agreement changes Employee's status as an at-will employee.  Either TQL or Employee may terminate Employee's employment for any reason at any time.

4.    <u>TQL Owns Confidential Information</u>.  All Confidential Information as described herein is proprietary and the sole property of TQL.

5.    <u>Confidential Information Is for TQL's Use Only</u>.  Unless Employee has prior written consent from TQL, Employee shall not at any time during the course of his or her employment by TQL, and at all times thereafter, use for any purpose or publish, copy, disclose, or communicate to any individual, firm, corporation, or other business entity other than TQL, any Confidential Information, except as properly necessary and authorized by TQL in the conduct of TQL's business or as required by law.  Employee agrees that all information related to TQL's business and disclosed to Employee or to which Employee has access during the period of his or her employment shall be presumed to be Confidential Information hereunder if there is any reasonable basis to believe it to be Confidential Information or if TQL appears to treat it as confidential.

6.    <u>Return of Company Property</u>.  Upon termination of employment or upon request by TQL for any reason, Employee will immediately deliver to TQL all originals and all copies of all documents and other materials obtained from or belonging to TQL, including but not limited to all Confidential Information, regardless of form, in Employee's possession, custody, or control, including but not limited to any TQL files, documents (including any containing customer information), computer data, or other media however stored, and Employee will retain no copy of any such document, data, or other materials.

7.    <u>Presumption Regarding Confidential Information</u>.  Employee agrees that, during the time limits of the covenants identified in Section 9(b), Employee's engaging in any form of employment relationship with a Competing Business, as defined in Section 9 below, will be presumed to necessarily result in Employee revealing, basing judgments and decisions upon, or otherwise using TQL's Confidential Information to unfairly compete with TQL.

8.    <u>Property Rights and Assignment</u>.  Employee agrees that any work, invention, product design, or technological innovation created, conceived, developed, produced, generated, and/or improved by Employee, whether or not patentable, or subject to copyright, trademark, or trade secret protection, at any time during or arising out of Employee's employment with TQL that results from, is suggested by, or relates to any work which Employee does for TQL, shall be the absolute property of TQL and shall promptly be disclosed by Employee to TQL.  Employee hereby assigns any and all right, title, and interest in any work product to TQL, including assigning any and all rights to any future invention arising out of or relating to Employee's

TX                                        3

employment with TQL. To the extent necessary, during employment and thereafter, Employee shall sign applications, assignments, and any other papers that TQL may consider necessary or helpful in perfecting and enforcing TQL's rights in, and to, any such invention, improvement, and/or technological innovation.

9.  Covenants and Remedies.

(a)  Agreement to Covenants and Material Breach. The Employee hereby covenants and agrees to the terms and conditions of the restrictive covenants and agreements set forth in Sections 4 through 9 of this Agreement, and agrees that any breach thereof shall constitute a material breach by the Employee of his or her obligations under this Agreement.

(b)  Covenants. Employee agrees that, during the course of his or her employment (except as required in the course of Employee's employment with TQL), and for a period of one (1) year after termination or cessation of Employee's employment for any reason:

(i)  Employee will not, directly or indirectly, own, operate, maintain, consult with, be employed by (including self-employment), engage in, or have any other interest (whether as an owner, shareholder, officer, director, partner, member, employee, joint venture, beneficiary, independent contractor, agent, or any other interest) in any Competing Business (as defined below), except the ownership of less than 1% of the outstanding equity securities of any publicly-held corporation or entity;

(ii)  Employee will not directly or indirectly, either as an employee, agent, consultant, contractor, officer, owner, or in any other capacity or manner whatsoever, whether or not for compensation, participate in any transportation-intermediary business or be employed by or associated with any Competing Business as more fully defined below;

(iii)  Employee will not, directly or indirectly, solicit any Customer, Motor Carrier, client, consultant, supplier, vendor, lessee, or lessor, or take any action, to divert business from TQL;

(iv)  Employee will not, directly or indirectly, interfere with, tamper with, disrupt, use, or attempt to disrupt any contractual or other relationship, or prospective relationship, between TQL and any Customer, Motor Carrier, client, consultant, supplier, vendor, lessee, or lessor of TQL;

(v)  Employee will not, directly or indirectly employ, recruit, solicit, or assist others in employing, recruiting, or soliciting any person who is, or within the previous twelve (12) months has been, an employee of, consultant with, or been party to another business relationship with TQL; and

(vi)  It is further understood and agreed that the running of the one (1) year set forth in this Paragraph shall be tolled during any time period during which Employee violates any provision of this Agreement.

(c)  Trade Secrets. The Employee recognizes and acknowledges that TQL's trade secrets, Customer lists, Motor Carrier lists, Load Management System, private processes, and other Confidential Information as they may exist from time to time are valuable, special, and

TX                                        4

unique assets of TQL's business, access to and knowledge of which are essential to performance of Employee's duties hereunder. Employee will not hereafter disclose such trade secrets, Customer lists, Motor Carrier lists, Load Management System, private processes, and other Confidential Information to any person, firm, corporation, association, or other entity for any reason or purpose whatsoever, except as required by law, nor shall Employee make use of any such property for Employee's own purpose or the benefit of any person, firm, corporation, association, or any entity other than TQL under any circumstance.

(d)    Reasonableness of Restrictions.    Employee recognizes that the foregoing geographic, duration, and content restrictions are reasonable and properly required for the adequate protection of the business of TQL from the disclosure of Confidential Information and unfair competition.

(e)    Injunction.  If there is a breach or threatened breach of any part of this Agreement, TQL shall be entitled to an injunction restraining Employee from such breach or threatened breach.   Alternatively and additionally, TQL, in its sole discretion, may pursue a claim for damages in tort and/or contract resulting from any breach or threatened breach of this Agreement by Employee.  If Employee is found by a court of competent jurisdiction to have violated the terms of this Agreement, Employee shall be liable for costs, expenses, and reasonable attorneys' fees incurred by TQL.

(f)    For purposes of this Agreement, the term: (i) "Customer" is any individual, business, or other entity, for whom TQL has rendered any service, or with respect to which TQL has planned and/or made contact for the purpose of rendering any service, within the twenty-four (24) months immediately preceding the termination or cessation of Employee's employment; (ii) "Motor Carrier" is any over-the-road shipper, carrier, trucker, or hauling business that has transported freight for any TQL Customer as a result of a relationship, dealings, arrangements, or communications with TQL, or with respect to which TQL has planned and/or made contact for this purpose, within the twenty-four (24) months immediately preceding the termination or cessation of Employee's employment; (iii) "Competing Business" is any person, firm, corporation, or entity that is engaged in shipping, third-party logistics, freight brokerage, truck brokerage, or supply-chain management services anywhere in the Continental United States; and (iv) "solicit" includes, but is not limited to, any efforts in any form intended to take business away from, intercept, or interfere with the business of TQL, including relationships with TQL and its employees, Customers, Motor Carriers, clients, consultants, suppliers, vendors, lessees, lessors, and employees, and specifically, including doing business with any Customer or Motor Carrier.

(g)    Pursuant to the Defense of Trade Secrets Act, 18 U.S.C. § 1833(b), an individual shall not be held criminally or civilly liable under any Federal or State trade secret law for the disclosure of a trade secret that is made (1) in confidence to a Federal, State, or local government official, either directly or indirectly, or to an attorney; and solely for the purpose of reporting or investigating a suspected violation of law; or (2) in a complaint or other document filed in a lawsuit or other proceeding, if such filing is made under seal.  An individual who files a lawsuit for retaliation by an employer for reporting a suspected violation of law may disclose the trade secret to the attorney of the individual and use the trade secret information in the court proceeding, if the individual files any document containing the trade secret under seal and does not disclose the trade secret, except pursuant to the court order.

TX                                                                                       5

10.   <u>Governing Law, Jurisdiction, and Venue</u>.   This Agreement shall be interpreted and enforced under the laws of the State of Ohio, without giving effect to conflict of law provisions which would result in the application of any law other than Ohio law.   Any action, suit, or proceeding with respect to or arising out of this Agreement shall be brought in the Court of Common Pleas, Clermont County, Ohio, the Travis County, Texas Civil County Courts, or in the United States District Court for the Western District of Texas.   Further, Employee hereby submits to the personal jurisdiction of the state and/or federal courts identified in this Section, consents to service of process therefrom, and waives any other requirements with respect to personal jurisdiction, venue, or service of process.

11.   <u>Severability</u>.   Should any of the provisions of this Agreement be declared or determined to be illegal or invalid, (a) the validity of the remaining parts, terms, or provisions shall not be affected thereby and said illegal or invalid part, term, or provision shall be deemed not a part of this Agreement; (b) the remaining provisions of this Agreement shall remain in full force and effect and shall not be affected by such illegal, invalid, or unenforceable provision or by its severance from this Agreement; and (c) there shall be added automatically as a part of this Agreement a provision as similar in terms to such illegal, invalid, or unenforceable provision as may be possible and still be legal, valid, and enforceable.

12.   <u>Personnel Policies</u>.   Employee agrees to abide by TQL's rules, regulations, policies, and practices, written and to the extent that Employee has actual knowledge thereof, unwritten, as they may from time to time be adopted or modified by TQL at its sole discretion.   TQL's written rules, policies, practices, and procedures shall be binding on Employee unless superseded by or in conflict with this Agreement, in which case this Agreement shall govern.   However, such rules, policies, practices, and procedures are not part of this Agreement and whether written, oral or implied, shall not create any contract between Employee and TQL at any time.   Additional contractual obligations or other modifications of this Agreement may be made only by an express written agreement between Employee and TQL.

13.   <u>No Conflicting Employee Agreement</u>.   Employee represents that Employee is not bound by any agreement or contract or other duty to a former employer or any other party which would prevent Employee from complying with any obligations hereunder or performing his or her duties as an employee of TQL.

14.   <u>Acknowledgments</u>.   Employee acknowledges and agrees that he or she:

(a) has had sufficient time within which to consider this Agreement before executing it;
(b) has carefully read and fully understands all of the provisions of this Agreement;
(c) knowingly and voluntarily agrees to all of the terms set forth in this Agreement;
(d) knowingly and voluntarily intends to be legally bound by this Agreement;
(e) has had sufficient opportunity to obtain and consult with his or her own lawyer regarding this Agreement; and
(f) has knowingly and voluntarily executed this Agreement.

15.   <u>Binding Agreement</u>.   This Agreement shall be binding and enforceable upon the parties hereto, their heirs, representatives, successors, and assigns.   This Agreement is not assignable by Employee, but is fully assignable by TQL without notice or consent from the Employee.

16. <u>Entire Agreement</u>. This Agreement sets forth the entire agreement between the parties hereto pertaining to the subject of this Agreement, and fully supersedes in all respects any and all prior oral or written agreements or understandings between the parties hereto pertaining to the subject of this Agreement, including, but not limited to, the prior non-compete. This Agreement may be amended or modified only upon a written agreement signed by both of the parties hereto. This Agreement may be executed in counterparts, each of which shall be deemed an original and all of which taken together shall constitute one Agreement.

**IN WITNESS WHEREOF**, the parties agree that this Agreement may be signed by electronic means, and by their electronic endorsement through TQL's system or their physical signature below, the parties intend to sign this Agreement and acknowledge that they have read this Agreement in its entirety; understand the terms of this Agreement; have had the opportunity to consult with legal counsel regarding the terms of this Agreement; and knowingly, voluntarily, and willfully enter into this Agreement without any duress or coercion of any kind.

**EMPLOYEE:**                                    **TOTAL QUALITY LOGISTICS, LLC**

_____     By: _____
                Signature

| 12/24/2019 | | Non-Compete (Texas 12-15-19).pdf | e-signature | Donato Cardenas JR (Terminated) (34765) | 12/14/2020 04:18:44 PM | By selecting the "I Agree" button below, I acknowledge that I have received this document; read it in its entirety; understand the terms, conditions and requirements the document places on me; have had the opportunity to consult with legal counsel regarding the terms of the document; and knowingly, voluntarily, and willfully agree to comply with the terms of the document. |
| 12/24/2019 | | Non-Compete (Texas 12-15-19).pdf | e-signature | Chris Brown (03776) | 12/15/2020 11:11:40 AM | By selecting the "I Agree" button below, I acknowledge that I have received this document; read it in its entirety; understand the terms, conditions and requirements the document places on me; have had the opportunity to consult with legal counsel regarding the terms of the document; and knowingly, voluntarily, and willfully agree to comply with the terms of the document. |

TX                                    7